## ARMOR *v.* FISK.

PLEADING—*performance of condition precedent.* In an action upon contract to pay two sums of money, the first, when a certain suit is defeated; the second, when the title to certain property is perfected, it is necessary to aver and prove performance of these conditions, or to excuse the failure.

*But a condition impossible* to be performed need not be noticed, and if, at the date of the contract, no suit was pending as set forth in the contract, the payee could not be required to show that he had defeated such suit, and he may recover the sum payable upon such condition, upon a count for an account stated.

EVIDENCE *of pendency of suit.* Whether a suit was pending as described in the contract at the time therein mentioned, was provable by the records of the court in which it was alleged to be pending.

*Appeal from District Court, Gilpin County.*

FIRST count in the declaration was *indebitatus assumpsit.*

"For certain quartz lode mining claims, lode claims, gulch claims, quartz mill claims, water mill claims, mill claims, water power, water privilege, flumes, buildings, stamp mills, water mills, tools and machinery, more particularly described as follows, to wit: Mining claims number (1) one, (5) five and the undivided half of number (6) six, on the Fisk lode, east from discovery. Also, claims number (1) one, and (2) two, on the Gregory extension lode, number (1) one being the discovery claim, and running (200) two hundred feet from the upper or north-east end of said discovery claim along said lode south-west to a point below the base of a large rock, and about fourteen feet south-west of a certain shaft sunk on said claim, and known as the shaft of Charles W. Fisk. Also claim number (4) four, on the Simmons lode, adjoining the Black Hawk Mill Company's claim on the south-west end, and running thence south-west along said lode (100) one hundred feet. Also two gulch claims, commencing at or near the road in front of Davenport's saloon, and running down two hundred feet in the direction of the Gregory lode. All of the above-described property lying and being in Gregory mining district, county of Gilpin, and territory of Colorado. Also the mill claims, water power and flumes, situated therein, commencing at a point on North Clear creek below the old toll road gulch and twenty (20) feet below what is generally known as the old Newland Arastra bed, and running from said creek eight hundred and fifty (850) feet. Also all of the quartz mill, with all the tools, machinery and appurtenances of every description and kind thereunto belonging, situate on said water claims, and generally known as the Fisk mill property ; and all the buildings and hereditaments on said claims, and situate in Enterprise Mining District, Gilpin county, Colorado territory."

In the second count the property was differently described, but no special agreement was mentioned.

The money counts were added.

The defendant pleaded the general issue, payment and a set-off.

At the trial, Fisk proved a conveyance from himself to Armor of the property mentioned in the declaration, and also gave in evidence the following agreement:

"ARMOR, JOHN
     and     } Agreement.
FISK, CHAS. W.

"Know all men by these presents, that whereas, heretofore, to wit, on the 20th day of December, A. D. 1862, John Armor, of the county of Gilpin and territory of Colorado, made, executed and delivered to Charles W. Fisk, of the same place, his certain writing obligation (a bond), subscribed with his name and sealed with his seal, by which said bond the said John Armor bound and obligated himself to pay to the said Charles W. Fisk the penal sum of ten thousand dollars ($10,000) in the event that the said Fisk, having performed the conditions imposed on him in said bond, and hereinafter set forth, the said Armor failed to make the said Fisk a good and valid deed to the undivided one-half interest in and to the property described in said bond, being the same that is hereinafter described and set forth ; the conditions to be performed by the said Fisk being, that the said Fisk should prosecute successfully against Dan. S. Parmalee, Benjamin Smith and others a certain suit or suits then pending, in which said suit or suits Parmalee, Smith and others claimed a portion of the property hereinafter described, and should, by the 20th day of December, A. D. 1863, legally clear the premises hereinafter described of all persons claiming or occupying the same, so that the said John Armor should have and enjoy the quiet and peaceable possession of all the property hereinafter described, so as to vest absolutely in the said Armor the title to all of said property both at law and in equity. Another condition to be performed by said Fisk was, that said     was to pay over to the said John Armor all sums of money which the said Armor should pay, or cause to be paid, on behalf of the said Fisk (over and above the sum of fifty-two hundred dollars [$5,200]) cash in hand, paid

by the said Armor to the said Fisk, in order to obtain a
clear title and peaceable possession to any of said property,
as well as all other sums of money which the said Armor
shall advance to the said Charles W. Fisk, or pay out for
the use and benefit of the said Fisk, as well as all indebted-
ness, by account or otherwise, by which the said Charles
W. Fisk may be indebted to the said Armor, together with
the interest at the rate of five per cent per month from the
date of such indebtedness is created up to the 20th day of
December, A. D. 1863 ; the property alluded to as afore-
said, lying, being and situated in the county of Gilpin and
territory of Colorado, to wit : Mining claims No. (1) one,
(5) five, and the undivided half claim No. (6) six on the
Fisk lode, north-east from the discovery claim ; also claims
Nos. (1 and 2) one and two, on the Gregory extension lode
(No. [1] one being the discovery claim), and running two hun-
dred feet from the upper or north-east end of said discovery
claim along said lode south-west to a point below the base
of a large rock, and about fourteen feet south-west of a cer-
tain shaft sunk on said lode, and known as the shaft of
Charles W. Fisk.   Also claim No. (4) four on the Simmons
lode, adjoining the Black Hawk Mill Company's claims on
the south-west end, and running thence south-west along
said lode one hundred feet ; also two gulch claims, com-
mencing at or near the road in front of Davenport's saloon,
and running down two hundred feet in the direction of the
Gregory lode ; also the mill claim, water power and flume,
situate thereon, commencing at a point on North Clear
creek, below the old toll road gulch, and twenty feet below
what is generally known as the old Newland Arastra bed, and
running down said creek eight hundred and fifty feet ; also
all the quartz mill, with all the tools, machinery and appur-
tenances of every description and kind thereunto belonging,
situated on said water claims, and generally known as the
Fisk mill property ; and whereas it is the desire of both
the said Armor and the said Charles W. Fisk, that said
property shall be sold by the said Armor, upon the condi-
tions hereinafter set forth :

"Now, therefore, know all men by these presents, that I, John Armor, for and in consideration of the premises, as well as in consideration of the covenants and agreements of the said Charles W. Fisk, hereinafter set forth, do by these presents covenant and agree, to and with the said Charles W. Fisk, to use my best endeavors to sell the property aforesaid within the space of four months from the date hereof, and upon the sale thereof, to pay over to the said Fisk, as a consideration in full for all the interest he may have in said property, the sum of twenty thousand ($20,000) dollars, less the amount, if any, that the said Fisk may be indebted to the said Armor at that time, provided always that the said Charles W. Fisk shall, on or before that time, have fulfilled all the conditions imposed on him in said bond, and hereinafter set forth ; and the aforesaid Charles W. Fisk, for and in consideration of the premises, as well as in consideration of the aforesaid covenants and agreements of the said Armor, doth, by these presents, covenant and agree, to and with the said Armor, that the said Armor may, at all times, within the four months from this date, bargain, sell and convey said property to such person, and for such sum or sums of money as he, said Armor, shall deem fit and proper, and the said Fisk, upon the payment to him by the said Armor of the sum of twenty thousand ($20,000) dollars, less the indebtedness of the said Fisk to the said Armor as aforesaid, hereby relinquishes forever all rights, title and interest, whether at law or in equity, to the property aforesaid, and agrees that the bond aforesaid shall be void and of no effect, and out of twenty thousand dollars to be paid by the said Armor, as aforesaid, the said Fisk hereby agrees that the said Armor may retain all sums of money which the said Armor shall have paid or caused to be paid, on behalf of said Fisk, to obtain a clear title and peaceable possession to any of said property, as well as all other sums of money which the said      shall or may have advanced or paid out for the use and benefit of the said Fisk, as well as all indebtedness by bond, note, account or otherwise, by which the said Fisk may be indebted to the

said Armor, together with interest at the rate of five per cent per month on such indebtedness, from the time it was or is credited up to the time such settlement may be made.

"It is also agreed and understood that in the event said sale is not made by said Armor as aforesaid, this agreement is to be considered as canceled and of no effect.    As witness our hands hereto subscribed, and our seals hereto affixed this 11th day of November, A. D. 1863.

(Seal.)          " JOHN ARMOR.

" CHARLES W. FISK."

This agreement bore a certificate of acknowledgment from a notary public.

The plaintiff below also introduced a written instrument, as follows :

"BLACK HAWK, Colorado, *April* 5, 1864.

"I promise to pay to Charles W. Fisk two thousand eight hundred and twenty dollars, and also pay two thousand one hundred and eighty dollars, the amount of a note given by Charles W. Fisk to one John Shumer, about March 10th, 1864, being amount of principal and interest due on said note when the same shall become due, provided the said C. W. Fisk shall successfully defend a suit now pending in the district court of Gilpin county, wherein Benjamin F. Smith and Dan. S. Parmalee are plaintiffs, and Chas. W. Fisk is defendant, and shall obtain a writ of restitution from said court and be put in possession of a certain shaft on the Gregory extension lode (about the possession of which the suit is pending), and generally known as the shaft of said Fisk, and I also agree to pay all costs that may accrue upon said suit, or upon any suit for title to said property after the April term of said district court, leaving a balance due to C. W. Fisk on property John Armor purchased by me from him of five thousand dollars after the amounts mentioned above are paid ; said five thousand dollars ($5,000) to be paid when the title to said property is all cleared, as mentioned in a certain bond from said Armor to

said Fisk, bearing date about December 20th, 1862, and also a certain agreement between said Armor and said Fisk, bearing date November 11th, A. D. 1863, and on record.

"JOHN ARMOR."

The defendant below introduced a written instrument, as follows :

"Received, Black Hawk, Colorado, April 5th, 1864, of John Armor, ten thousand dollars ($10,000) in part payment for my interest in certain property in Gilpin county, Colorado territory, which I agreed with said Armor, on November 11th, A. D. 1863, that he should sell, and for which interest I was to receive twenty thousand dollars ($20,000) as payment in full as per said agreement. I have also received of said Armor his obligation to pay me two thousand eight hundred and twenty dollars ($2,820) when I shall obtain a writ of restitution from the district court of Gilpin county to the possession of certain property on the Gregory extension lode, more fully described in said obligation and in the agreement above referred to ; and I have also received from the said Armor his obligation to pay a certain note given by me to John Shumer about March 10th, 1864, for two thousand dollars, due in three months from date, with interest at the rate of three per cent per month, upon which note said Armor is security. Now, if the said Armor shall pay the sum of two thousand eight hundred and twenty dollars ($2,820), above specified, and also the amount of the note to Shumer when the same shall become due, which would be, in principal and interest, $2,180, then there would be due to me, as balance in full of the twenty thousand dollars ($20,000) above spoken of, five thousand dollars ($5,000), to be paid according to the conditions of a certain bond given me by said Armor, December 20th, 1862, and also the conditions of a certain agreement made between said Armor and myself, on November 11th, 1863.

"CHAS. W. FISK."

There was a large amount of evidence not referred to in the opinion of the court, and therefore it is not inserted here.

The cause was tried to the court without a jury, and judgment for the plaintiff for $3,337, and costs.

Messrs. ROYLE & BUTLER, for appellant.

Mr. JOHN W. REMINE and Mr. E. T. WELLS, for appellee.

HALLETT, C. J.   In the investigation of this case we have not found it necessary to consider all the objections to the record made by the appellant.   The rights of the parties are established by the two papers of date April 5, 1864, and the agreement of November 11, 1863, to which reference is made in those papers, and we shall confine the discussion to those instruments.   We learn from the agreement of November 11, 1863, that the appellee was jointly interested with the appellant in certain property described therein, which the latter held by deed from the former ; if the appellant should sell the property he covenanted to pay to the appellee $20,000, less any indebtedness of the appellee to him, and upon the condition that the appellee should successfully prosecute a certain suit or suits in which the property was involved, and "legally clear the premises hereinafter described of all persons claiming or occupying the same, so that the said John Armor should have and enjoy the quiet and peaceable possession of all the property hereinafter described, so as to vest absolutely in the said Armor the title to all of said property, both at law and in equity."

By the writings of April 5, 1864, it appears that the sale referred to in the agreement had been effected, and the agreement was modified in some important particulars. The appellee then acknowledged that he had received $10,-000 of the $20,000 mentioned in the agreement, and the balance of $10,000 was divided into two equal parts, and separate conditions attached to each of the parts.   First, the sum of $5,000 was payable "provided the said C. W. Fisk shall

successfully defend a suit now pending in the district court of Gilpin county wherein Benjamin F. Smith and Dan. S. Parmalee are plaintiffs and Chas. W. Fisk is defendant, and shall obtain a writ of restitution from said court and be put in possession of a certain shaft on the Gregory extension lode (about the possession of which the suit is pending), and generally known as the shaft of said Fisk."

Second, the sum of $5,000 was payable "when the title to said property is all cleared, as mentioned in a certain bond from said Armor to said Fisk, bearing date about December 20, 1862, and also in a certain agreement between said Armor and said Fisk, bearing date November 11, 1863, and on record."

Appellant claims that this last clause is changed so as to include all the conditions specified in the agreement by the paper of April 5, 1864, signed by the appellee. It is true that this writing of the appellee states that the last $5,000 is payable upon the conditions of the bond and agreement, and this standing alone would of course include all of those conditions, but the paper given by appellant mentions only the title to the property, and as he was the party upon whom the obligation to pay was placed, we may presume that he selected his language with care.

Again, the condition respecting the Smith and Parmalee suit, mentioned in the agreement, was made applicable to the first $5,000 by the writings of April 5, and if the same condition was to be applied to the second sum of $5,000 the purpose of dividing the sum of $10,000 into two parts, as was done by those writings, is not apparent. It would seem, also, that the indebtedness and advances which occupied so large a space in the agreement of 1863, and was evidently the subject of much anxiety on the part of the appellant, had been extinguished before the writings of April 5 were drawn. The appellant makes no mention of it in the obligation signed by him, but he obliges himself to pay costs which should thereafter accrue in defending or securing the title to the property. This obligation to pay costs is not at all consistent with the notion that advances

previously made were yet in arrear. It is plain that the first $5,000 was payable upon the successful issue of the Smith and Parmalee suit, and the second upon perfecting the title to the property in the appellant, and securing to him the possession thereof. The appellant, having doubts as to the soundness of the title to the property, retained $10,000 of the purchase-money to secure himself against eventual loss. As the issue of the Smith and Parmalee suit, if favorable to the appellee, would in some measure demonstrate his right to the property, the appellant was willing to pay one-half the amount upon the successful termination of that controversy ; the remaining one-half of the $10,000 was to abide the result of a more comprehensive scrutiny of the title, with a view to supply defects therein if any should be found. Now here were acts to be done by the appellee before he could call upon the appellant for payment, and if it were possible to perform these acts, the appellee should have averred in his declaration and proved upon the trial performance, or an excuse for the non-performance of them. In *Campbell* v. *Jones*, 6 Term R. 570, Lord Kenyon says : "If one thing is to be done by a plaintiff, before his right of action accrues on the defendant's covenant, it should be averred in the declaration that that thing was done."

So, also, in 1 Chitty's Pl. 321, we find the doctrine laid down as follows :

"But when the consideration of the defendant's contract was executory, or his performance was to depend upon some act to be done or forborne by the plaintiff, or on some other event, the plaintiff must aver the fulfillment of such condition precedent, whether it were in the affirmative or negative, or to be performed or observed by him or by the defendant, or by any other person, or must show some excuse for the non-performance."

In the declaration in this cause we find only the common counts, and of course there is no averment of performance, or of excuse for the non-performance of the conditions precedent, mentioned in the writings of April 5, 1864, and

this upon the supposition that there is no inherent impossibility in performing those conditions is decisive of the question respecting their admissibility as evidence under the declaration.    Our attention has been called to that numerous class of cases where, upon sale of goods, or performance of labor under special contract, the plaintiff, although unable to comply strictly with his contract, and therefore unable to support a special count upon it, has, nevertheless, been allowed to recover the value of his goods or services under common counts, and an attempt has been made to show that this case may stand upon the doctrine of those cases.

If the appellee had contracted to sell property to the appellant, and had conveyed the property, but not in the time or manner specified in his contract, and the appellant had accepted the property, the analogy between those cases and this case would be easily traced, and we should have no difficulty in applying the rule laid down in those cases.    But the present is not like those cases.    Here was property sold, and part of the purchase-money paid, the vendee, with the consent of the vendor, withholding the balance of the purchase-money until the title to the property should be established, which is a payment to be made upon condition and not the substantial performance of a contract.    We conclude, therefore, that the writings of April 5, 1864, were not admissible under any count in the declaration, unless, indeed, the conditions mentioned in those writings were impossible of performance.    As to the second of those conditions respecting the title, we cannot perceive any inherent impossibility in regard to its fulfillment, nor has any such impossibility been suggested.    As to the first of those conditions respecting the Smith and Parmalee suit, it is said that there was no such suit pending in the district court of Gilpin county, at the date April 5, 1864, and if that fact appeared, it seems to us the condition would be impossible.    If no suit existed, certainly the appellee could not resist successfully, nor could he obtain a writ of restitution therein.    If the appellee had contracted to procure

Smith and Parmalee to institute a suit against him in the district court of Gilpin county, and to defeat the suit thus instituted, he would be held to his contract.   But here the undertaking is to defeat a certain suit pending in a certain court, and if there is no suit pending in that court, it is like the case given in the books, of one who should contract to go to Rome in a day, inherently impossible to be performed.

In *Worsley* v. *Wood*, 6 Term R. 718, Lord Kenyon declares that, "If there be a condition precedent to do an impossible thing, the obligation becomes single."

And the same doctrine is found in Bacon's Abridgment, title Condition N.   Under this rule, if the condition respecting the Smith and Parmalee suit was impossible, the first $5,000, mentioned in the writings of April 5, was payable unconditionally and presently after the making of the instrument. In the words of Lord Kenyon, the obligation was single, and there was no condition to be performed or excused and no necessity for any averment of performance or of excuse for the non-performance.   The sum of money, being payable absolutely, might be recovered upon a count for an account stated.   However, we find in the record no evidence tending to show the non-existence of the Smith and Parmalee suit, and for the want of such evidence the judgment must be reversed.   The fact, if it exists, was provable by the records of the court of the date April 5, 1864, and those records, or a copy thereof, should have been introduced.   *Pitcher* v. *King*, 1 Carr & Kir. 655 (47 E. C. L. R. 655) ; 1 Greenl. Ev., § 507.   It is not necessary to consider further the admissibility of the evidence given in the court below, nor is it necessary to express any opinion as to the weight of the evidence.   In conclusion, we desire to express our satisfaction with the manner in which this case was prepared for hearing in this court.   The abstracts, prepared by counsel for appellant, present the parts of the record to which the attention of the court is directed in a full and perspicuous manner, and thereby the labors of the court have been very much lightened.   The duty of preparing abstracts of the record in this court is usually so imperfectly performed,

that the abstracts are of no service whatever to the members of the court. We hope that the commendable practice inaugurated by the counsel for appellant may be very generally observed.

The judgment of the district court is reversed and the cause is remanded for further proceedings.

*Reversed.*